USCA1 Opinion

 

 December 7, 1995 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-1410 COVENTRY SEWAGE ASSOCIATES, ET AL., Plaintiffs, Appellants, v. DWORKIN REALTY CO., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Mary J. Lisi, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Stahl and Lynch, Circuit Judges. ______________ ____________________ ERRATA SHEET ERRATA SHEET Please make the following changes to the opinion issued on November 22, 1995: Cover sheet - delete "Incorporation" and insert "Incorporated" for name of appellants' law firm Page 2, line 18 - change "appellants" to "appellees"  United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-1410 COVENTRY SEWAGE ASSOCIATES, ET AL., Plaintiffs, Appellants, v. DWORKIN REALTY CO., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Mary J. Lisi, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Stahl and Lynch, Circuit Judges. ______________ ____________________ David A. Wollin with whom Adler, Pollock & Sheehan Incorporated ________________ _______________________________________ was on brief for appellants. Steven M. Richard with whom Tillinghast, Collins & Graham was on _________________ ______________________________ brief for appellees. ____________________ November 22, 1995 ____________________ STAHL, Circuit Judge. Appellants, Coventry Sewage STAHL, Circuit Judge. _____________ Associates ("Coventry") and Woodland Manor Improvement Association ("Woodland") brought a diversity action against appellees, Dworkin Realty Co. ("Dworkin") and The Stop & Shop Supermarket Company ("Stop & Shop"). The United States District Court for the District of Rhode Island found that the amount-in-controversy requirement of 28 U.S.C. 1332(a) was not met and dismissed the case, pursuant to appellees' motion under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. For the reasons stated below, and because of the unusual facts of this case, we reverse. I. I. __ FACTUAL BACKGROUND AND PRIOR PROCEEDINGS FACTUAL BACKGROUND AND PRIOR PROCEEDINGS ________________________________________ Coventry and Woodland own and operate a private sewer line and sewage pumping station servicing, among others, a supermarket run by Stop & Shop, located on property owned by Dworkin, a wholly-owned subsidiary of Stop & Shop (hereinafter appellees will be referred to collectively as "Stop & Shop").1 In June 1992, Coventry and Woodland (hereinafter, collectively "Coventry") entered into a "Sewer Connection Agreement" with Stop & Shop, whereby Stop & Shop agreed to pay a service fee for sewer-main usage. The service fee was based, in part, upon the number of cubic feet of water consumed on the property. To determine the amount  ____________________ 1. The existence of diversity of citizenship is undisputed. -2- 2 of water consumed, the parties' contract relied on invoices from the Kent County Water Authority ("KCWA"). The KCWA sent these invoices to Stop & Shop, and Stop & Shop in turn forwarded them to Coventry. Because of a dispute over the reasonableness of an increase in the service fee -- an increase Coventry claimed was permitted by the contract -- Stop & Shop refused to pay Coventry's bills which accumulated beginning in early 1994. In October 1994, Coventry filed this action seeking recovery of $74,953.00, the amount it claimed to be due based upon water-usage numbers obtained from the KCWA invoices and what Coventry claimed was the correct new service fee rate. Coventry also sought contractual attorneys' fees. It is undisputed that, at the time Coventry commenced the action, it alleged the amount in controversy in the belief that it exceeded the jurisdictional minimum, and not as a ruse to invoke federal jurisdiction. Shortly after the complaint was filed, but before Stop & Shop filed its answer, Stop & Shop contacted the KCWA about the invoices underlying Coventry's fee calculations. The KCWA then sent an employee to the property who discovered that there had been a misreading of Stop & Shop's water meters, essentially caused by the adding of an extra zero to the number of cubic meters actually consumed. By letter dated November 18, 1994, the KCWA notified Stop & Shop that -3- 3 it was correcting the billing error by changing the amounts of the invoices. Based upon the KCWA's corrected invoices, Coventry reduced the sum of its bills to Shop & Stop to only $18,667.88, an amount that included the disputed fee increase. Subsequently, Stop & Shop paid the undisputed portion of the fee, $10,182.48, initially withholding the disputed balance of $8,485.40. Stop & Shop ultimately paid this remaining sum as well, reserving the right to recoup the amount should it prevail in its challenge to the reasonableness of the service fee. Stop & Shop, presumably doubting the existence of diversity jurisdiction, asked Coventry to voluntarily dismiss the federal action; Coventry refused, however, apparently because of its intention to pursue in federal court its claim for contractual attorneys' fees.2  ____________________ 2. We note that although attorneys' fees usually will not constitute a portion of the amount in controversy, there is an exception where, as here, the fees are contractual. Department of Recreation v. World Boxing Ass'n, 942 F.2d 84, ________________________ __________________ 89 (1st Cir. 1991). In this case, Coventry cannot avail itself of this exception as a basis for federal jurisdiction because, not only are there no specifics in the record as to the amount of such fees, Coventry informed this court at oral argument that its estimation of attorneys' fees was only $10,000. -4- 4 Stop & Shop moved to dismiss the action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.3 The district court granted the motion, finding that, "to a legal certainty," the amount in controversy did not exceed $50,000 as required by 28 U.S.C.  1332(a). Notwithstanding the small amount actually in controversy, Coventry appeals the dismissal of the action. At oral argument before this court, counsel for Coventry stated that the reason for the insistence upon federal jurisdiction was that the case would get to an earlier trial in federal court (including the appeal proceedings) than if the case were pursued in state court. II. II. ___ DISCUSSION DISCUSSION __________ A. Standard of Review ______________________ We review de novo the district court's dismissal __ ____ for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Murphy v. United States, 45 F.3d 520, 522 (1st ______ ______________ Cir.), cert. denied, 115 S. Ct. 2581 (1995). Although the _____ ______ facts pertinent to this appeal are undisputed, we are nonetheless "mindful that the party invoking the jurisdiction of a federal court carries the burden of proving its  ____________________ 3. Although the KCWA notified Stop & Shop of the error in November 1994, Stop & Shop raised only a general, boilerplate amount-in-controversy defense in its December 1994 answer, and did not formally move to dismiss on the jurisdictional basis until February 1995. -5- 5 existence." Taber Partners, I v. Merit Builders, Inc., 987 __________________ _____________________ F.2d 57, 60 (1st Cir.), cert. denied, 114 S. Ct. 82 (1993). _____ ______ B. Analysis ____________ Coventry argues that at the time it filed the action, it claimed, in good faith, damages in excess of $50,000; thus, the subsequent reduction of the amount in controversy did not divest the district court of jurisdiction. Coventry contends that the KCWA's post-filing discovery of the billing error and changing of the invoice amounts was a "subsequent event" that neither undermined its good faith in filing, nor disturbed the court's jurisdiction once it attached. Shop & Stop argues that the billing error was a mere "subsequent revelation" that proved, to a legal certainty, that the amount in controversy had always been below the jurisdictional minimum and thus the court properly dismissed the case for lack of subject matter jurisdiction. This case illustrates the competing policies that operate when a court makes an amount-in-controversy determination. On the one hand, a federal court should rigorously enforce the jurisdictional limits that Congress chooses to set in diversity cases. See Pratt Central Park ___ __________________ Ltd. v. Dames & Moore, Inc., 60 F.3d 350, 352 (7th Cir. ____ _____________________ 1995). On the other hand, preliminary jurisdictional determinations should neither unduly delay, nor unfairly deprive a party from, determination of the controversy on the -6- 6 merits. See id. at 351-52 (noting the undesirable cost of a ___ ___ prolonged jurisdictional inquiry that only serves to determine which court will hear the case); 14A Wright & Miller, Federal Practice and Procedure 3701 at 12-13 (1985) ______________________________ (noting competing policies). As a policy matter, the "which court" determination ought to be made with relative dispatch so that the parties may proceed to resolution of the dispute'smerits. See Pratt Central ParkLtd., 60 F.3d at 352. ___ ______________________ For the purpose of establishing diversity jurisdiction, the amount in controversy is determined by looking to the circumstances at the time the complaint is filed. Thesleff v. Harvard Trust Co., 154 F.2d 732, 732 n.1 ________ _________________ (1st Cir. 1946) (noting that "federal jurisdiction depends upon the facts at the time suit is commenced, and subsequent changes . . . in the amount in controversy [will not] devest [sic] it"); 14A Charles A. Wright & Arthur R. Miller, Federal _______ Practice and Procedure 3702 at 28-29 n.31 (1985); Watson v. ______________________ ______ Blankinship, 20 F.3d 383, 387 (10th Cir. 1994); Klepper v. ___________ _______ First American Bank, 916 F.2d 337, 340 (6th Cir. 1990); see ___________________ ___ Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 ___________________ _______________ (1989) (noting that for determining diversity of citizenship, "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed"). Moreover, it has long been the rule that a court decides the amount in controversy from the face of the complaint, "unless -7- 7 it appears or is in some way shown that the amount stated in the complaint is not claimed `in good faith.'" Horton, 367 ______ U.S. at 353 (quoting St. Paul Mercury Indem. Co. v. Red Cab ___________________________ _______ Co., 303 U.S. 283, 288 (1938)). When a plaintiff initiates ___ an action in federal court, the plaintiff knows or should know whether the claim surpasses the jurisdictional minimum. St. Paul, 303 U.S. at 290. ________ [The plaintiff's] good faith in choosing the federal forum is open to challenge not only by resort to the face of the complaint, but by the facts disclosed at trial, and if from either source it is clear that his claim never could have amounted to the sum necessary to give jurisdiction, there is no injustice in dismissing the suit. Id. ___ Coventry and Stop & Shop both cite passages from the seminal case of St. Paul, 303 U.S. 283 (1938), without _________ discussing its facts. We pause to do so here. In St. Paul, ________ the plaintiff-employer initiated a state-court action against the defendant-insurer for payment of workers' compensation benefits. Id. at 284-85. The plaintiff alleged an amount of ___ damages sufficient to permit the defendant to remove the case to federal court. Id. at 285. Once in federal court, the ___ plaintiff filed two amended complaints. Attached to the second amended complaint, which alleged the same amount of damages as originally claimed, was an exhibit detailing the damages; the exhibit revealed that the total sum of damages -8- 8 was no more than $1,380.89, an amount below the jurisdictional minimum (then $3,000). Id. The court of ___ appeals, sua sponte, took notice of the exhibit and directed ___ ______ a remand of the case, reasoning that the amount in controversy was less than the jurisdictional minimum and that "[t]he court cannot close its eyes to the obvious, nor go ahead with the trial of a cause of which it has no jurisdiction." 90 F.2d 229, 230 (7th Cir. 1936). The Supreme Court reversed, noting that there was no evidence that, at the time the action was commenced, the plaintiff could have ascertained the actual sum of the damages, and that the later exhibit setting forth this sum did not undermine plaintiff's initial good faith. 303 U.S. at 295-96 (also observing that the sum claimed was comprised of "numerous" items that, in turn, were each the total of several other items).4 Accordingly, the Court reasoned that  ____________________ 4. The Court also noted that the removal posture of the case additionally bolstered the finding of good faith in claiming damages. St. Paul, 303 U.S. at 290-91. Because the _________ plaintiff initially filed in state court, it was unlikely that the amount claimed was meant to somehow confer federal jurisdiction. Id.  ___ The Court reasoned that a defendant's right to remove was not to be "subject to the plaintiff's caprice" by subsequent events -- whether or not such events are under plaintiff's control. Id. at 293-94; see also Pro Medica, Inc. v. ___ ___ ____ _________________ Theradyne Corp., 331 F. Supp. 231, 232 (D.P.R. 1971) ________________ (refusing to allow plaintiff's amended complaint, that reduced amount of damages claimed to less than jurisdictional minimum, to divest federal court of jurisdiction). Thus, events occurring subsequent to removal, such as a stipulation, an affidavit, or an amendment that reduces the claim below the jurisdictional minimum, would not deprive the -9- 9 the case fell comfortably within the rule that "subsequent reduction of the amount claimed cannot oust the district court's jurisdiction." Id. at 295. ___ In a portion of St. Paul crucial to the instant ________ case, and from which the parties before us parse their favorite phrases, the Court wrote: The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts. The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never  ____________________ court of jurisdiction once it has attached. St. Paul, 303 ________ U.S. at 292-93. Despite the added weight the removal posture contributed to the good faith finding, the Court noted that dismissal of the case would not have been warranted had plaintiff originally brought the case in federal court. Id. ___ at 290. Therefore, we find the reasoning of St. Paul no less ________ applicable to the instant case, where Coventry originally filed in federal court, and where there is no dispute as to its good faith in its claimed amount in controversy. -10- 10 was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction. Id. at 288-89 (footnotes and citations omitted). ___ The rules gleaned from the foregoing passage may be summarized as follows. First, federal courts must diligently enforce the rules establishing and limiting diversity jurisdiction. Second, unless the law provides otherwise, the plaintiff's damages claim will control the amount in controversy for jurisdictional purposes if it is made "in good faith." If the face of the complaint reveals, to a legal certainty, that the controversy cannot involve the requisite amount, jurisdiction will not attach. Id. at 289, ___ 291. Moreover, if later evidence shows, to a legal certainty, that the damages never could have exceeded the jurisdictional minimum such that the claim was essentially ____ ____ feigned (colorable) in order to confer jurisdiction, the action must be dismissed. See also id. at 290 (noting that ___ ____ ___ plaintiff's good faith in choosing a federal forum may be challenged by trial facts which establish that the "claim never could have amounted to the sum necessary to give jurisdiction"). Finally, if events subsequent to commencement of the action reduce the amount in controversy -11- 11 below the statutory minimum, the federal court is not divested of jurisdiction. A careful review of St. Paul evinces its primary ________ concern for the plaintiff's "good faith" in alleging the amount in controversy. When discerning a plaintiff's good faith, a court may look to whether it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." St. Paul, 303 U.S. at 289; see also ________ ___ ____ Horton, 367 U.S. at 353; Jones v. Landry, 387 F.2d 102, 104 ______ _____ ______ (5th Cir. 1967) ("Thus, there is but one test; good faith and legal certainty are equivalents rather than two separate tests."). But see Local Div. No. 714, Amalgamated Transit ___ ___ _________________________________________ Union v. Greater Portland Transit Dist., 589 F.2d 1, 9 (1st _____ _______________________________ Cir. 1978) (apparently finding alternative tests, noting that where there is no evidence that the amount claimed was not in good faith, it must appear "to a legal certainty" that the amount in controversy does not exceed the jurisdictional minimum), overruled on other grounds by Local Div. 589, ________________________________ ________________ Amalgamated Transit Union v. Massachusetts, 666 F.2d 618 (1st _________________________ _____________ Cir.), cert. denied, 457 U.S. 1117 (1981). _____ ______ The parties in the instant case spill much ink over the meaning of "good faith": whether it includes an objective as well as subjective component, and if so, whether "objective" good faith includes "objective facts" as opposed to "actual facts," etc. Stop & Shop argues that the -12- 12 "objective facts" were always the same: that it consumed much less water than originally shown on KCWA's invoices, and that although the claimed amount in controversy was over $50,000 at the time of filing, the "actual" amount in controversy is, indisputably, less than the jurisdictional minimum. Coventry counters that not only did it file with subjective good faith, but, because a wholly independent third party's actions were relied upon (indeed, it was Stop & Shop that forwarded KCWA's invoices to Coventry), there is no reason that Coventry "should have known" about the "actual" amount in controversy and thus, it claimed the damages in "objective" good faith as well. This court has found that "good faith" in the amount-in-controversy context includes an element of "objective" good faith. In Jimenez Puig v. Avis Rent-A-Car _____________ _______________ Sys., 574 F.2d 37, 40 (1st Cir. 1978), we found that, ____ although the plaintiff had not acted "in deliberate bad faith" in filing his damages claim for mental anguish, "[t]he question, however, is whether to anyone familiar with the applicable law this claim could objectively have been viewed as worth [the jurisdictional minimum]." Id. (viewing ___ evidence in light most favorable to plaintiff, and finding that, from the outset, plaintiff had no chance of recovering statutory minimum); cf. Pratt Central Park Ltd. v. Dames & ___ ________________________ _______ Moore, 60 F.3d 350, 353 (7th Cir. 1995) (upholding _____ -13- 13 contractual liability cap of $5,000, then dismissing for failure to meet amount-in-controversy requirement). We find that here, there is no dispute as to good faith, subjective or objective.5 It is undisputed that Coventry alleged the amount in controversy believing its accuracy at the time. Furthermore, there is no evidence, and Stop & Shop does not argue otherwise, that Coventry had any reason to believe, at the time of filing, that KCWA's invoices, upon which the service fee was calculated, were factually incorrect. We find that, objectively viewed, at the time of its filing, Coventry's claim was worth more than the jurisdictional minimum. This case fits well within the rule that once jurisdiction attaches, it is not ousted by a subsequent change of events. See St. Paul, 303 U.S. at 295; Klepper, ___ _________ _______ 916 F.2d at 340 (holding that summary judgment on one claim, that reduced amount in controversy below statutory minimum, did not divest court of jurisdiction); 14A Wright & Miller, supra, 3702 at 35 (noting same). In Thesleff v. Harvard _____ ________ _______ Trust Co., 154 F.2d 732, 732 n.1 (1st Cir. 1946), we noted __________ that although plaintiff filed remittiturs that reduced the amount in controversy below the jurisdictional minimum, the facts at the time the action was commenced conferred  ____________________ 5. We decline, at this time, to make any sort of legal distinction between "objective facts" and "actual facts" for purposes of determining amount in controversy. -14- 14 jurisdiction which subsequent events could not divest. See ___ also Ford, Bacon & Davis, Inc. v. Volentine, 64 F.2d 800, 801 ____ _________________________ _________ (5th Cir. 1933) (refusing remand where an amended complaint, removing co-plaintiff who had died after action was filed, "merely discloses a fact which arose after the suit and recognizes its legal consequences, without impugning the original propriety of the jurisdiction"). As in the amount-in-controversy context, the rule that jurisdiction is not divested by subsequent events has also been applied to the diversity-of-citizenship requirement. See Smith v. ___ _____ Sperling, 354 U.S. 91, 93 n.1 (1957); Mollen v. Torrance, 22 ________ ______ ________ U.S. 537, 539 (1824). In the instant case, Coventry filed the complaint because Stop & Shop refused to pay its bills totalling $74,953.00. The amount in controversy, at the time of filing, exceeded the statutory minimum regardless of the then-unknown "actual facts" of Stop & Shop's water consumption. It was not until Coventry filed the action that Stop & Shop inquired about KCWA's invoices and KCWA subsequently changed them to reflect accurately the amount of water usage. Presumably, had the billing error never been detected, the action would have proceeded on Coventry's damages claim of $74,953.00. The fact that an independent third party's error initially inflated the amount in controversy above the jurisdictional minimum does not lead to -15- 15 the inevitable result that the third party's correction, subsequent to the filing of the complaint, affects the propriety of the jurisdiction once it attached. Stop & Shop insists that, in this case, we should draw a distinction between "subsequent events" and "subsequent revelations." Stop & Shop argues that the subsequent revelation that the actual amount of damages never met the jurisdictional minimum -- as opposed to a subsequent event that reduces that amount -- divests the court of jurisdiction, regardless of what the parties knew or should have known at the time of filing. At oral argument before this court, counsel for Stop & Shop acknowledged that the logical extension of this argument is that the court would have been without jurisdiction over the case even if KCWA's error had not been discovered until trial. To support this argument, Stop & Shop cites three cases that are factually distinguishable from the instant one, and that, in any event, are not controlling upon this court. First, in American Mutual Liab. Ins. Co. v. Campbell ______________________________ ________ Lumber Mfg. Corp., 329 F. Supp. 1283, 1284 (N.D. Ga. 1971), _________________ the plaintiff filed an action for amounts due on insurance contracts. The plaintiff was forced to estimate its damages claim because certain of defendant's records were not available to it. Id. at 1285. During post-filing discovery, ___ the plaintiff learned that the actual amount in controversy -16- 16 was below the statutory minimum. Id. The court found that ___ the maximum amount recoverable on the plaintiff's theory never varied, and noted that the correct amount in controversy was ascertainable at the time the action was filed. Id. at 1286. Thus, in dismissing the action, the ___ court reasoned that the plaintiff's realization that its earlier estimation of damages was erroneous was not an "event," under St. Paul, that reduced the amount recoverable. ________ Id. at 1286. ___ Second, in Jones v. Knox Exploration Corp., 2 F.3d _____ ______________________ 181, 182 (6th Cir. 1993), the plaintiffs revealed in their appellate brief that "it was not discovered until this appeal that the amount in controversy is actually less than $50,000." The court acknowledged that subsequent events that reduce the amount in controversy, such as an amendment to the complaint or an application of a post-discovery legal defense, would not oust federal jurisdiction. Id. at 183. ___ The court reasoned that "[a] distinction must be made, however, between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action." Id. at 183. The court found ___ that there was no subsequent event that occurred to reduce the amount; instead, there was only a subsequent revelation that, in fact, the required amount was not in controversy at -17- 17 the time the action was filed. Id. Thus, the court ordered ___ dismissal based on lack of subject matter jurisdiction. Id. ___ Third, in Tongkook America, Inc. v. Shipton ________________________ _______ Sportswear Co., 14 F.3d 781, 782-83 (2d Cir. 1994), the _______________ parties realized during pre-trial discovery that, one year prior to filing suit, the plaintiff had drawn a certain amount upon a letter of credit that was erroneously added to the damages claim. The court rejected plaintiff's argument that the discovery of the failure to credit the amount withdrawn was an "event subsequent to the institution of the suit." Id. at 784-85. The court deemed the plaintiff's ___ previous withdrawal upon the letter of credit an "event which preceded the commencement of the suit [that] objectively altered the amount of [plaintiff's] claim." Id. at 786. ___ Thus, the sum certain in controversy was lower than the jurisdictional minimum and the court ordered the case dismissed for lack of subject matter jurisdiction. In the instant case, Coventry did not base its damages claim on a faulty estimation that required recalculation during discovery, as in American Mutual; ________________ rather, it alleged the amount in controversy based upon a third-party's information that neither party had any reason to know was erroneous. Unlike the "mere revelation" in Jones _____ that there was never the requisite amount in controversy, the reduction in the amount in controversy here occurred only -18- 18 after KCWA's affirmative acts of checking the water meters and changing the invoice amounts. Finally, although portions of the Tongkook court's reasoning are not entirely consistent ________ with our decision here, we distinguish that case narrowly on the facts; in Tongkook, the parties themselves made the error ________ affecting the amount in controversy approximately one year prior to commencement of the suit. 14 F.3d at 782-83. Thus, it appears that the plaintiff in that case should have known that its claim did not exceed the jurisdictional minimum. See St. Paul, 303 U.S. at 290 (stating that a plaintiff ___ _________ should know whether the claim meets the amount in controversy requirement). In the instant case, an independent third party with otherwise no connection to the case made an apparently non-obvious error so that the amount-in- controversy at the time of filing, in fact, exceeded the jurisdictional minimum. Coventry had no reason to know that its claimed amount of damages was in error. Moreover, the reduction of the amount in controversy resulted from acts occurring wholly after the action commenced. We hold that, under these extraordinary circumstances, the district court's jurisdiction was not disturbed by the subsequent reduction of the amount in controversy.6  ____________________ 6. We note here a paradox. Under 28 U.S.C. 1332(b), a plaintiff who files a claim in federal court based on diversity jurisdiction is subject to the court's imposition of costs if the plaintiff "is finally adjudged to be entitled to recover less than the sum or value of $50,000." 28 U.S.C. -19- 19 III. III. ____ CONCLUSION CONCLUSION __________ For the foregoing reasons, we vacate the judgment of the district court, and remand for further proceedings consistent with this opinion. Each party shall bear its own costs.  ____________________ 1332(b). Assuming that Coventry will persist in pursuing the case in federal court, it seems odd that while it has technically met the requirements of 1332(a), it may not avoid potential liability under 1332(b)'s cost sanction. Cf. Horton, 367 U.S. at 362 (noting the "strange result that ___ ______ while respondent has met the requirements of 1332(a), . . . under 1332(b) it will be liable for costs for failing to meet the same requirements) (Clark, J. dissenting). The determination of whether or not to impose such cost sanctions is, of course, within the sound discretion of the district court. -20- 20