Feer v. Chapman                              CV-99-601-JD   03/20/00
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


M. Peter Feer, et al.

      v.                                     Civil No. 99-501-JD
                                             Opinion No. 2000 DNH 069
Edward Chapman, et al.


                                O R D E R


      The plaintiffs filed suit seeking a declaratory judgment

pursuant to 28 U.S.C.A. § 2201, claiming diversity jurisdiction

under 28 U.S.C.A. § 1332(a)(2).   The defendants move to dismiss

(document no. 4) for lack of subject matter jurisdiction pursuant

to Federal Rule of Civil Procedure 12(b)(1), and the plaintiffs

object.   The jurisdictional dispute is based on the amount in

controversy requirement of 28 U.S.C.A. § 1332(a).


                           Standard of Review

      The party seeking to invoke the court's jurisdiction bears

the burden of establishing by competent proof that jurisdiction

exists.   See Coventry Sewage Assocs. v. Dworkin Realty Co., 71

F.3d 1, 4 (1st Cir. 1995); Stone v. Dartmouth College, 682 F.

Supp. 106, 107 (D.N.H. 1988) (citing O'Toole v. Arlington Trust

Co., 681 F.2d 94, 98 (1st Cir. 1982)).   "Competent proof has been

defined as proof to a reasonable probability that jurisdiction

exists."   15 James Wm. Moore, et al., Moore's Federal Practice §

102.107 (3d ed. 1997).  The court must "construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff."  Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)).  "A plaintiff, however, may not rest merely on 'unsupported conclusions or interpretations of law.'"  Murphy, 45 F.3d at 522 (citing Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir. 1993)).  When ruling on a 12(b)(1) motion, the court may consider whatever evidence has been submitted in the case, including affidavits and exhibits.  See Aversa, 99 F.3d at 1210; Stone, 682 F. Supp. at 107.

## Background

Emily and Stuart Mudd, owners of a large tract of land on Whitton Pond in Carroll County, New Hampshire, executed a lease in 1970 with Mark C. Feer and his wife, Helene DeLone Feer.  The lease pertained to a fifteen-acre portion of the Mudds' land.  Under the terms of the lease, the Feers were to pay one dollar each year in rent to the Mudds, "for the term which expires on the death of the survivor of Tenants."  In addition to defining the Feers as "the Tenants," the lease provides:

2

10. . . . The word "Tenants", as used herein, shall include the heirs, executors, administrators and assigns, each of whom shall have the same rights, remedies, powers, privileges, and shall have no other liabilities, rights, privileges or powers than [they] would have been under or possessed had [they] originally signed this Lease as Tenants.

Shortly after the lease went into effect, the Feers had a cabin built on the property, as they were allowed to under the following provision in the lease:

5. Tenants may construct, at their expense, a cottage, dock and appurtenant buildings on the demised premises, an access driveway and electric power and telephone lines, provided Landlords have given prior written approval to the location, design and total cost of such improvements and the location and total cost of the access driveway and the electric and telephone lines.

The Feers paid $30,000 for construction of the cabin. The Feers and the Mudds agreed that the Feers would eventually be reimbursed this amount, under the terms of the lease:

13. At the expiration of the term of this Lease, Landlords will reimburse Tenants in the amount of $___ (i.e., the amount equal to the actual cost incurred in the construction of the cabin). Landlords will reimburse Tenants also for the actual cost (as indicated in schedules to be attached to this Agreement) of any other future improvements to the demised premises and of any access road and utility lines as provided for in Section 5 above, unless Landlords and Tenants agree to a new arrangement for the continued use of the demised property, or unless any improvements have been damaged (excepting reasonable wear and tear) and not restored in which case the cost of restoration will be deducted from reimbursement. For these purposes the cost of restoration will be calculated on the basis of the construction prices prevailing at the time the cabin or other improvements were built as indicated by the

3

actual costs incurred and recorded in this Agreement
and appended schedules.

The defendants have tendered $30,000 in escrow to the plaintiffs in fulfillment of this obligation. Therefore, this amount does not appear to be in dispute.

In 1976, the Feers made additional improvements costing $4,000-5,000. Mark Feer agreed not to seek reimbursement under the lease for these costs.

In 1978, Emily Mudd, who was by this time a widow, conveyed the entire parcel of land, including the fifteen-acre portion leased to the Feers, to the Mudd Family Partnership. The plaintiffs assert that they did not become aware of this conveyance until much later.

In 1986 and 1987, Mark Feer arranged for electric service to be installed at the cabin. The plaintiffs allege that the cost of this improvement was $65,880. The parties dispute whether the plaintiffs are entitled to reimbursement for this amount under the lease. Both parties have submitted substantial evidence to the court concerning whether the Mudds ever approved the cost of the improvements, as required by the terms of the lease.

By 1988, both of the Feers had died and bequeathed their interest in the Whitton Pond property to two of their three children, who are the plaintiffs in this action. The children continued to use the property with no objection from the Mudds.

4

In 1995, the children offered to buy the property from the Mudds, precipitating discussions and negotiations concerning the property's future use. At some point during the next few years, the plaintiffs learned that Emily Mudd had conveyed the entire parcel of land to the Mudd Family Partnership. The plaintiffs assert that this was a disposition of the land, triggering their option to purchase their leased fifteen-acre portion of the property pursuant to the terms of the lease:

> 14. If Landlords decide to sell or otherwise dispose of the property of which the demised premises are a part, Landlords will offer Tenants the opportunity to purchase the demised premises. As a general guide, the price of such purchase should approximate an amount which, together with what could be expected to be realized for the remaining property, is approximately equal to the price which the Landlords could obtain for the whole of the property. If Tenants do not wish to purchase the premises, Landlords may terminate this Lease and will then reimburse Tenants as provided in [paragraph] 13.

In December of 1996, the plaintiffs had an appraisal done on the fifteen-acre portion of land. The appraiser estimated the market value of the property, as vacant, to be $50,000.

In October of 1999, discussions ended when the Mudd Family Partnership notified the plaintiffs that they could no longer use the property and they had until December 31, 1999, to remove their personal property. The plaintiffs then filed the instant lawsuit against the partnership and its Managing Partner, Edward Chapman, the grandson of Stuart and Emily Mudd.

5

The plaintiffs seek declaratory judgment on three points. First, they seek to be declared Tenants under the lease, entitled to the exclusive use and occupancy of the property for the remainder of their lives. Second, they seek a declaration that the defendants are estopped from asserting that the lease term expired at Mark Feer's death in 1988, since the plaintiffs used the property from then until 1995 without objection from the defendants. Third, the plaintiffs seek a declaration that they are entitled to purchase the property from the defendants as provided in the lease.

## Discussion

In order for the court to have jurisdiction over a suit brought by diverse citizens, the amount in controversy must exceed $75,000. See 28 U.S.C.A. § 1332(a). To determine whether a plaintiff can meet the amount in controversy requirement, the court first looks at the facts alleged in the complaint and the circumstances present at the time of filing. See Coventry, 71 F.3d at 4. The amount claimed in the complaint determines the amount in controversy for jurisdictional purposes unless it appears that the amount was not claimed in good faith, which the court assesses using the "legal certainty" test. See id. at 4, 6. If the complaint reveals "to a legal certainty" that the

6

plaintiff cannot recover an amount in excess of the jurisdictional prerequisite, the court lacks jurisdiction.[1] See id. at 6. Or, if additional evidence shows that the claim could never have involved the requisite amount, such that the plaintiff must have exercised bad faith in making the complaint, the court is deprived of jurisdiction. See id. However, if the plaintiff alleges an amount in controversy based on facts that the plaintiff reasonably believes to be accurate at the time the action is commenced, then the plaintiff has acted in good faith and jurisdiction attaches. See id. at 6-7.

"In an action for declaratory judgment, 'the amount in controversy is measured by the value of the object of the litigation.'" Department of Recreation v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991) (quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347-48 (1977)). When a plaintiff seeks to obtain property by specific performance, the amount in controversy is established by the value of the

---

[1]The burden remains on the party asserting jurisdiction to prove that jurisdiction exists. See Coventry, 71 F.3d at 4. Therefore, the plaintiffs must show by a preponderance of the evidence supported by competent proof that it does not appear to a legal certainty that their claims fall below the jurisdictional minimum. See 15 Moore's Federal Practice, supra, §§ 102.106-.107; see also Department of Recreation v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991).

property.  See Occidental Chem. Corp. v. Bullard, 995 F.2d 1046, 1047 (11th Cir. 1993) (citing Ebensberger v. Sinclair Ref. Co., 165 F.2d 803, 805 (5th Cir. 1948)).  Even if what the plaintiff seeks is the right to purchase the property for a contractual amount less than market value, it is the value of the property, and not the lower contractual amount, that determines the amount in controversy.  See id.

The plaintiffs have alleged that they have the right to purchase the fifteen-acre leased portion of property from the defendants.  The value of the property determines the amount in controversy for this claim, regardless of what the plaintiffs would actually have to pay for it.  See id.  There is record evidence to indicate that the value of the land alone, not including the cabin or other improvements, is $50,000.  The parties appear to agree that the cabin is worth at least $30,000.  Considering the additional value of the property being wired for electricity and telephone service, the value of the property is evidently well above the $75,000 bar.  Consequently, the plaintiffs have shown that the amount in controversy for at least one of their claims does not fall below $75,000 to a legal certainty.

The defendants argue that the twenty-year statute of limitations on real property actions bars the plaintiffs from

claiming they have a right to purchase the property based on an alleged disposition of the property that occurred in 1978. See N.H. Rev. Stat. Ann. ("RSA") § 508:2 (1997). Therefore, the defendants claim, the plaintiffs' remaining claims fail to meet the requisite jurisdictional amount. However, jurisdiction is determined as of the time of filing the complaint, and "[s]ubsequent events such as a bar by a statute of limitations raised as a defense will not serve to deprive the court of jurisdiction. If a statute of limitations reduces the amount claimed to an amount lower than the jurisdictional minimum, the district court still has jurisdiction to adjudicate the rest of the claim." Seafoam, Inc. v. Barrier Sys., Inc., 830 F.2d 62, 66 (5th Cir. 1987) (internal citations omitted). If the complaint itself established the defense, then the court could conclude that the plaintiffs brought the claim in bad faith. However, the complaint only asserts that a disposition of the property was made; it does not say when the disposition occurred.

Furthermore, the argument that a claim is barred by a statute of limitations raises an affirmative defense, not a jurisdictional defect. See Bergstrom v. University of New Hampshire, 959 F. Supp. 56, 58 (D.N.H. 1996). Therefore, a motion to dismiss on this ground is more properly brought and considered under Rule 12(b)(6) than Rule 12(b)(1). See id.; see

9

also <u>Heinrich v. Sweet</u>, 44 F. Supp. 2d 408, 412 (D. Mass. 1999) (discussing differences between the two motions). Even if the court were to construe the defendants' motion as one brought under Rule 12(b)(6) with respect to this argument, the complaint fails to establish a statute of limitations defense on its face. <u>See</u> <u>Garita Hotel Ltd. Partnership v. Ponce Fed. Bank</u>, 958 F.2d 15, 17 (1st Cir. 1992) (discussing standard for review under Rule 12(b)(6)). The complaint only alleges that the Mudds disposed of the property but does not specify when this event occurred. The defendants rely on information outside the pleadings to make their statute of limitations argument. To consider this information, the court would have to convert the defendants' motion to a motion for summary judgment, and the court declines to do so at this stage of this litigation. <u>See</u> <u>Watterson v. Page</u>, 987 F.2d 1, 3-4 (1st Cir. 1993).

<u>Conclusion</u>

For the foregoing reasons, the defendant's motion to dismiss (document no. 4) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

March 20, 2000
cc:  Andrew W. Serell, Esquire

10

Robert L. Tofel, Esquire
Randall F. Cooper, Esquire