**Keith STEWART, et al. Plaintiffs**

v.

**TUPPERWARE CORPORATION; et al. Defendants**

**No. CIV.01–2199 SEC.**

United States District Court, D. Puerto Rico.

Jan. 21, 2003.

---

Luis A. Melendez, San Juan, PR, for plaintiffs.

Miriam Gonzalez–Olivencia, Guaynabo, PR, Luis M. Ortega–Garcia, San Juan, PR, for defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Before the Court is Defendants' motion to dismiss for lack of subject matter jurisdiction (Docket # 23). Defendants argue that Plaintiffs have failed to establish the jurisdictional amount necessary to sustain this case in federal court. Plaintiffs have duly opposed said motion (Docket # 30). Having considered the parties' arguments, the Court will **GRANT** Defendants' motion and the case will be **DISMISSED WITHOUT PREJUDICE**.

### Factual Background

The present case involves a tort action deriving from an unfortunate auto accident that occurred on September 12, 2000. Plaintiffs Mr. Stewart and Mrs. Ramírez resided in New York, had just gotten married, and had come to Puerto Rico for their honeymoon. According to Plaintiff Stewart's own account, the accident happened as follows. After their arrival, in the afternoon of September 12, 2000, Plaintiffs rented a Toyota Echo 2000 at Charlie's Auto Rental in Condado. Plaintiff Stewart was driving and his wife was sitting in the front passenger seat. They exited Charlie's Auto's parking lot and drove east on Ashford Avenue, until they reached Magdalena Avenue. Magdalena Avenue is a one way street which runs eastward. Condado Avenue intersects Magdalena Avenue and, after that intersection, it runs only one way, **up northward** until it intersects with Ashford Avenue, where the Greenhouse Restaurant and a Walgreen's pharmacy are located. At that same time Defendant Ruth Fuente Alicea was driving her Pontiac Sunfire illegally against the traffic, going **southbound** on Condado Av-

enue. At that moment, Plaintiffs were driving eastbound on Magdalena Avenue. When they reached the intersection of Magdalena and Condado Avenues, they had a green light, so they proceeded to enter the intersection. Suddenly, Defendant Fuente, still driving illegally against the traffic, entered the same intersection without reducing speed or without taking any precautions. As a result, the two vehicles collided. The front of the Pontiac Sunfire hit the front left side of the Toyota Echo. The accident occurred at approximately 5:00 p.m. Plaintiffs allege that the sole cause of the accident was Defendant Fuente's illegal driving on the wrong way down Condado Avenue, and her failure to stop or take any precautions when she crossed the intersection with Magdalena Avenue. As a result of this car accident, Plaintiffs allege that they both suffered severe and lasting physical damages, as well as substantial emotional pain and suffering.

Specifically, Plaintiff Ramírez claims that she suffered a neck injury (whiplash), chest trauma, and cuts on her legs. These injuries have allegedly resulted in continuing neck and chest pain, which have hindered her ability to work, and prevented her from having intimate contact with her husband for a period of about two to three months. Her medical expert, retained for the purposes of this litigation, reports that she suffers from a permanent incapacity of 3% of her bodily functions. Her psychological expert, also retained for the purposes of this litigation, states that the accident and the injuries, including the fact that her honeymoon was cut short by the accident, have caused emotional distress to Plaintiff which would require about one year of psychological therapy.

Plaintiff's Stewart situation is quite similar. He claims to have suffered cervical whiplash injury also, which has resulted in continuing neck and head aches. The same medical expert who examined his wife estimates his permanent physical incapacity at 7%. The psychological expert's conclusions with respect to him also mirror those regarding his wife. Finally, he also alleges that the injuries have hindered his ability to work, and prevented him from having intimate contact with his wife for a period of about two to three months.

Plaintiffs also allege in their complaint that they have incurred in expenses for medical treatment related to these injuries, and that they will continue to require such treatment in the future. They also seek reimbursement of the $4,000.00 that they allegedly spent on repairs to the rented Toyota Echo.

## Applicable Law and Analysis

District Courts have jurisdiction in diversity cases when the amount in controversy exceeds $75,000.00 28 U.S.C. § 1332(a). When evaluating whether this jurisdictional amount is met, the Court may not aggregate several plaintiffs' claims. *Rompe v. Yablon,* 277 F.Supp. 662 (S.D.N.Y.1967). For a claim to survive, it must allege the $75,000.00 minimum by itself.

It is well-settled law that, unless challenged, plaintiff's good faith allegations of damages will control the determination of the amount in controversy. *See, e.g., Department of Recreation and Sports of Puerto Rico v. World Boxing Association,* 942 F.2d 84, 88 (1st Cir.1991) *citing Gibbs v. Buck,* 307 U.S. 66, 72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939). However, once the defendant challenges the amount of damages alleged in the complaint, then the burden shifts to the plaintiffs to establish facts indicating that, to a legal certainty, the claims involve more than the jurisdictional minimum. *Id.* at 88; *St. Paul Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *McNutt v.*

*General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir.2001); Charles A. Wright, Arthur R. Miller & Edward H. Cooper; Federal Practice and Procedure: Jurisdiction 3d § 3702. A case "can only be dismissed ... for a failure to [satisfy the jurisdictional amount-in-controversy requirement] when it appears to a legal certainty that ... the claim is really for less than the jurisdictional amount." *Serrano v. Nicholson Nursery, Inc.*, 844 F.Supp. 73,75 (D.P.R.1994) (*citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). As such, the party seeking jurisdiction has the burden of demonstrating that it is not a legal certainty that the claim involves less than the jurisdictional amount. *Dep't. of Recreation v. World Boxing Ass'n.*, 942 F.2d 84, 88 (1st Cir. 1991). The party can satisfy this burden by furnishing affidavits or amended pleadings. *Id.*

As the First Circuit has held, the proof offered by the plaintiffs must persuade the Court that someone familiar with the applicable law could objectively find the claim worth more than the jurisdictional minimum, otherwise dismissal must follow. *See Jimenez Puig v. Avis Rent a Car Sys.*, 574 F.2d 37, 40 (1st Cir.1978). Once diversity jurisdiction is challenged, the party invoking the court's jurisdiction has the burden of proving facts that support the allegation of jurisdiction by a preponderance of the evidence. *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir.). And lastly, courts must "rigorously enforce the jurisdictional limits that Congress chooses to set in diversity cases". *Coventry Sewage Assoc. v. Dworkin Realty Co.*, 71 F.3d 1, 3 (1st Cir.1995).

 In this case, Defendant argues that neither of the plaintiffs can establish that it is not a legal certainty that their claims fall below the jurisdictionally required amount of $75,000. Since this is a diversity action, Puerto Rico law will govern the amount of damages recoverable by the Plaintiffs. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see also Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). Accordingly, Plaintiffs carry the burden of establishing that, to a legal certainty, Puerto Rico law will support recovery of more than $75,000 for their individual claims. Plaintiffs, however, argue that damage awards in Federal Court may not be limited by state court decisions. While this might be true, it is also the case that similar Commonwealth court decisions are instructive as to the amount of damages that are appropriate in this case, even though they might not be controlling. In diversity jurisdiction actions a federal court must look at state law to determine the nature and extent of the rights to be enforced. *Id.* Accordingly, let us take a look at some Puerto Rico Supreme Court cases which are somewhat comparable to the case at bar.

In *Cortés v. Cotton States Mutual Insurance, Co.*, R–63–15 (1963), the plaintiff suffered injuries due to a car accident. She had torticollis, pain and muscular spasms in her neck, and difficulty moving her right arm and shoulder. She was in a hospital for four days and had trouble sleeping afterwards due to the pain. She had to keep taking tranquilizers and missed work for a whole month. The Supreme Court awarded her $7,346.80 in 2002 dollars[1], well short of the jurisdic-

---

**1.** All the adjustments made to the awards due to inflation were calculated using the CPI Inflation Calculator at *http://www.bls.gov/bls/inflation.htm*. The CPI

tional amount. And we should note that Plaintiffs in this case have not brought proof that they had to actually spend a single night in a hospital, or that they missed work for any extended period of time due to the injuries. Therefore, any award in this case. would probably be smaller than the one in *Cortés*.

In *Portilla v. Carreras De Schira*, 95 D.P.R. 804, 1968 WL 17264 (1968), a car accident resulted in whiplash injuries which led to back pain and fibromiositis. The plaintiff in *Portilla*, like in the case before us, continued working, although some of her physical activities, like dancing, were somewhat limited. The court initially granted her $41,678.16 in 2002 dollars, but the Supreme Court found this to be excessive, so the award was reduced to $10,419.54.

▮ Perhaps the most striking example is the situation in *Bonano v. Estarellas Pagani*, 96 D.P.R. 556 (1968). In that case, the court found that the plaintiffs, again due to a car accident, had suffered lacerated contusions and cervical muscular spasms. They received physiotherapy treatment for about three and a half months. In addition, one of the plaintiffs suffered from vomiting, dizziness and slight dehydration. It was also stipulated by the parties that the plaintiffs had suffered deep emotional anguish. Lastly, the court found that the plaintiffs had a permanent incapacity of between 5 and 10 %. Based on these findings, the court granted awards, later upheld by the Supreme Court, in the amounts of $13,024.43 and $20,839.08 in 2002 dollars, to the plaintiffs, respectively. These figures fall, of course, well short of the jurisdictional minimum. The injuries suffered by the plaintiffs in

*Bonano* can hardly be characterized as less severe than the ones in the present case. As mentioned before, Plaintiffs have presented no evidence, other than their unsupported allegations, that they actually received any medical treatment after the night of the accident. In fact, apart from the ex-post facto report of the medical expert retained for the purposes of this litigation, the only documented medical diagnoses in the record are those present in the reports prepared by ACAA after the accident. These reports are rather laconic, and only refer to Plaintiff's injuries as chest trauma and leg lacerations, and cervical whiplash injury, respectively. Furthermore, Plaintiffs have not shown that they have actually required the services of a psychiatrist or psychologist. The report prepared by their psychological expert for the purposes of this litigation states that they will require one year of therapy, however, there is no proof that Plaintiffs have in fact sought or needed any such therapy. This falls well short of the stipulation in *Bonano* as to the existence of deep emotional anguish. We cannot help but find that the facts in this case are not more compelling than those in *Bonano*, at least as it relates to the physical and emotional injuries. The only possible distinction between these cases would be the loss of consortium alleged by Plaintiffs. However, as we will discuss in more detail later, we do not think that any damages awarded for said loss would even come close to being enough to surpass the jurisdictional minimum.

Another interesting and comparable case is *Cuadrado Mestre v. García Ramírez*, 99 D.P.R. 154, 1970 WL 23772 (1970). In that case, the plaintiff suffered

inflation calculator uses the average Consumer Price Index for a given calendar year. This data represents changes in prices of all goods and services purchased for consumption by urban households. This index value has been calculated every year since 1913. For the current year, the latest monthly index value is used.

neck and back trauma that impeded him from attending to his business for four days. Furthermore, the plaintiff continued to suffer pain for around six or seven months. Damages in the amount of $9,345.36 in 2002 dollars were awarded to said plaintiff. Again, we must remember that in the present case plaintiffs did not lose any time at work.

In *Carrasquillo v. Lippitt & Simonpietri*, 98 D.P.R. 659 (1970), the plaintiff suffered multiple contusions in his thorax, right shoulder and both arms, as well as damage to his posterior cervical muscles. He missed two weeks of work. Nonetheless, since he, like the plaintiffs in this case, did not have to be hospitalized or receive special treatment, like diathermia or massages, the Supreme Court reduced the original award of $17,288.92 to $4,672.68 (in 2002 dollars). *See also, Cubero Vélez v. Insurance Co. of P.R.*, 99 D.P.R. 748, 1971 WL 30447 (1971) (reducing an award for damages sustained in a traffic accident from $4,476.54 to $895.31 (in 2002 dollars) because the plaintiff did not offer medical proof of the treatment and physiotherapy allegedly received during several visits to the hospital).

Lastly, in *Almodóvar García v. Ortega González*, RE–87–175 (1989), the plaintiff suffered another traffic accident, which resulted in severe trauma and spasms in his neck. He had to endure 6 physiotherapy treatments, and was taking medication for the pain for about six months. Even in this case, where evidence of medical treatment for six months after the accident was present, and where the Supreme Court actually chose to increase the amount of damages awarded by the court of first instance, the final award only amounted to $6,579.44 in 2002 dollars for his physical and emotional damages. *See also, Resto Casillas v. Colón González*, 112 D.P.R. 644, 1982 WL 210625 (1982) (where a plaintiff with 45% mental incapacity and 25% physical incapacity (both well above the 3 and 7 % physical incapacity found by Plaintiffs' own expert in this case) had an award of $93,937.80 reduced to $56,362.68 (in 2002 dollars)).

Plaintiffs have made reference to a decision by the First Circuit Court of Appeals which they understand favors their position, *Duchesne v. American Airlines Inc.*, 758 F.2d 27 (1st Cir.1985). However, this case is inapplicable since the Court in that occasion made an analysis under the previous $10,000.00 jurisdictional minimum. Plaintiff in that case barely made it to the $10,000.00, but would not have been even close to fulfilling the current $75,000.00 requirement.

On the other hand, Defendants cite several federal cases which the Court finds are much more comparable to the case at bar. For example, this Court was confronted with a similar scenario in *Tirado–Toro v. Builder's Square, Inc.*, 986 F.Supp. 714 (D.P.R.1997). In that case, this Court held that an accident resulting in fourteen (14) stitches to a plaintiff's head did not support a damage award in excess of $75,000. Although the Plaintiff in *Tirado–Toro* alleged damages in excess of $80,000, the Court dismissed the claim after finding that no one who was familiar with the applicable law could objectively view the claim as being worth the jurisdictional minimum. *Id.*, at 716. In finding that the case did not meet the jurisdictional amount, the Court relied heavily on the fact that there was no record of continued medical treatment for the emotional injury suffered. *Id.* In the case at bar, Plaintiffs have failed to provide proof of **any actual continued medical treatment received** for neither their physical nor their emotional conditions.

This Court also dismissed the complaint in *Serrano v. Nicholson Nursery, Inc.*, 844

F.Supp. 73 (D.P.R.1994) for failure to fulfill the jurisdictional amount requirement. The Court based its holding on the fact that there was no evidence or allegations regarding any "consultations with any medical personnel for purposes of diagnosis or treatment as a result of the suffering." *Id.* at 76. The same was true in *De Jesús v. Eastern Air Lines, Inc.*, 708 F.Supp. 470 (D.P.R.1989), where the plaintiffs failed to bring any evidence that they had "consulted any medical personnel for purposes of diagnosis or treatment as a result of the emotional upset suffered." *Id.* at 472. Accordingly, the Court in *De Jesús* concluded that the plaintiffs had "failed to show that their emotional condition ha[d] been affected substantially." *Id.* at 473.

Finally, in another comparable case *Bewley v. Sims*, 438 F.Supp. 708 (D.Md. 1977), Plaintiff claimed damages in excess of the jurisdictional minimum resulting from a fight at a Super Bowl party. Although Plaintiff suffered a broken nose and two black eyes, the Court dismissed the case for failure to establish the jurisdictional minimum, noting that the injuries would not be permanent. *See also Turner v. Wilson Line of Massachusetts*, 242 F.2d 414, 418–19 (1st Cir.1957) (jurisdictional amount not met by a claim for compensation for seven to eight hours of headache, weakness, dizziness, nausea and vomiting).

Based on the foregoing discussion, we find that the physical and emotional damages in this case would not be enough to sustain an award of $75,000.00, given the Puerto Rico Supreme Court precedent concerning cervical injuries. In this case, Plaintiffs have not shown that they lost any time from work, or that they actually had to receive any type of physical or psychological treatment due to their injuries, apart from the first-aid emergency treatment given right after the accident.

While it is true that their psychological expert's report suggests psychological treatment for one year, we cannot forget that this report was obtained and prepared for **the purposes of this litigation**. There is no evidence that Plaintiffs sought or received any type of treatment before the litigation, there is no evidence that they have followed their own expert's advice and sought treatment during and after the litigation. This leads us to believe that their injuries are not as severe as Plaintiffs claim. We will now discuss how the damages which could be awarded for the loss of consortium alleged by Plaintiffs could possibly be calculated.

The well-known compendium of damage awards under Puerto Rico tort law, Antonio J. Amadeo Murga, *El Valor de los Daños en la Responsabilidad Civil*, Tomo I, at 334, 341, 349, and 355, provides several examples of emotional damage awards, from Commonwealth courts, based on the **death** of a husband or wife. The average award is equivalent to about $199,180.19 in 2002 dollars. *Id.* Now, if we were to suppose that an average marriage may last, to be conservative, twelve years, then the loss of consortium alleged in this case of 3 months, would amount to 2.08% of the whole marriage. Applying this percentage *to the average compensation* for the **total loss of a husband or wife**, we would get $4,149.59. Of course, this does not take into account the fact that the husband and wife, in this case are still alive, and the only part of their relationship that was seriously affected (at least the part that we are considering in this section) was their sexual life. Nonetheless, based on this logic, the average award for the three month loss of consortium would probably be, at most, $5,000.00. This amount, even when added to an award for physical and emotional damages, as discussed above, would not be enough to surpass the juris-

dictional limit. Accordingly, we find that this Court lacks jurisdiction over this case.

**Conclusion**

Although this Court is sensitive to Plaintiffs' very real suffering due to the unfortunate accident in which they suffered their injuries, it cannot renounce its identity as a court of limited jurisdiction. This Court takes very seriously its responsibility to preserve its legitimacy by respecting the limits of its jurisdiction. Plaintiffs, of course, still have the Commonwealth courts available for the vindication of any of their rights under state law which might have been violated. As such, and for all the reasons discussed above, Defendants' motion to dismiss is **GRANTED**, and this case will be **DISMISSED WITHOUT PREJUDICE**. Consequently, all motions which remain pending in this case (Docket 35, 40, 41, 43, 46, 47, 50 and 54) are **MOOT**.

SO ORDERED.